**Paul J. WOLBER, Plaintiff,**

v.

**SERVICE CORPORATION INTERNATIONAL, a Texas corporation, dba Ross, Burke & Knobel Mortuary; Douglas B. Miller, an individual, Defendants.**

**No. CV–R–85–44–ECR.**

United States District Court,
D. Nevada.

June 25, 1985.

John N. Schroeder, Reno, Nev., for plaintiff.

Lionel Sawyer & Collins, Reno, Nev., for defendants.

### MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

The defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted (Fed.R. Civ.P. 12(b)(6) ). They insist that the allegations of the pleading don't set forth the prima facie elements required for an Age Discrimination in Employment Act (ADEA) claim for relief.

The particular allegations of the complaint that must be considered in deciding this motion are: The action is based on age

discrimination in employment; the plaintiff was hired as an embalmer-funeral director on a part-time basis in the Spring of 1981 and changed to full-time in April 1982; in addition to specific acts of age discrimination, the corporate defendant has engaged in a pattern of discriminatory conduct in terminating older employees; defendant Miller manages a local business for the corporate defendant, he dislikes older people, and it was he who terminated the plaintiff; at the time of termination the plaintiff attempted to contact defendant Miller's supervisor, but the latter did not return the plaintiff's calls; and the plaintiff was fifty years of age at the time of termination.

█ The case of *Douglas v. Anderson*, 656 F.2d 528 (9th Cir.1981) is instructive in that it emphasizes the variety and flexibility of approaches that may be utilized in an ADEA action to establish that age was the likely reason for the plaintiff's termination. For example, discrimination may be shown by either a disparate treatment or a disparate impact theory. *Id.* at 531. Also, the essential elements of the claim for relief may vary according to the circumstances. *Id.* at 531–532.

In *Oxman v. WLS–TV*, 595 F.Supp. 557, 562 (N.D.Ill.1984), the claim for relief under the ADEA read: "On or about January 27, 1984, Plaintiff, Jonah Oxman, was terminated by Defendant WLS–TV on the basis of his age which was 60." The complaint was held to satisfy the notice pleading standards of Fed.R.Civ.P. 8(a)(2). *Id.* The allegation that Mr. Oxman had been fired on the basis of his age, sixty, tracked the language of the ADEA itself, as found in 29 U.S.C. § 623(a). The opinion points out that there is no exclusive list of essential elements that must be proved; it follows that elements need not be listed in the complaint. 595 F.Supp. at 563.

█ Appropriate standards for ruling on a motion to dismiss are listed in *Kuhlmeier v. Hazelwood School Dist.*, 578 F.Supp. 1286, 1291 (E.D.Mo.1984): The facts alleged in the complaint must be viewed in the light most favorable to the plaintiff; the pleading need not state every element

of a claim for relief with precision; a complaint is sufficient if it contains allegations from which an inference fairly may be drawn that evidence on the material points will be introduced at trial; and a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. The ADEA claim for relief in the instant action passes muster when tested by these standards.

The plaintiff's second claim for relief is based on the Nevada Equal Employment Act. The operative section, NRS 613.-330(1), declares that it is an unlawful employment practice for an employer to discharge any person because of his age. The same reasoning would apply as to the sufficiency of the allegations as has been discussed above in connection with the ADEA.

· █ The third claim for relief is based on breach of express and implied employment contract. The defendants point out that the plaintiff's employment was "at-will", and the "at-will" rule is that either employer or employee may terminate with or without reason and without legal liability therefor. However, there is a "strong public policy" exception to this rule. *See Hansen v. Harrah's*, 100 Nev.Adv.Op. 8, 675 P.2d 394, 396 (1984). Here the plaintiff's position is that his firing was motivated by his employer's discriminatory bias against older employees. When a state's legislature has enacted legislation that forbids certain conduct, that conduct is against public policy. *Lucas v. Brown & Root, Inc.*, 736 F.2d 1202, 1205 (8th Cir. 1984); *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330, 1332–2 (Cal.1980). NRS 233.010(1) specifically declares that it is the public policy of the State of Nevada to foster the right of all persons to hold employment without discrimination because of age. Further, NRS 613.330(1) makes it an unlawful employment practice for an employer to discharge any person because of his age. It seems safe to conclude that Nevada has a strong public policy against age discrimination in employment. In light of

the *Hansen v. Harrah's* opinion, this Court predicts that the Nevada Supreme Court, if and when it faces the question, will recognize that age discrimination fits into the public policy exception to the "at-will" employment doctrine.

██ The implied covenant of good faith and fair dealing is the basis of the plaintiff's fourth claim for relief. The defendants argue that this theory is recognized in an insurance context, but not in an employment scenario. Again, the Nevada Supreme Court seems to support the position of the plaintiff herein. In *Aluevich v. Harrah's*, 99 Nev. 215, 660 P.2d 986, 987 (1983) the opinion states:

> The dissent correctly notes that an implied covenant of good faith and fair dealing has mainly been implied in contractual relations which involve a special element of reliance such as that found in partnership, insurance and franchise agreements. The case relied on by the dissent concerned a situation where one party has traditionally held vastly superior bargaining power—the termination of a salesperson's "at will" employment contract. *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251, 1253 (Mass.1977).

The need to show the existence of the special element of reliance, before the implied covenant of good faith may be applied to the termination of an "at-will" contract, is emphasized again in *Dalton Properties, Inc. v. Jones*, 100 Nev.Adv.Op. 88, 683 P.2d 30, 31 (1984). Both *Aluevich* and *Dalton Properties* determined that the evidence had failed to prove the special element of reliance. Nevertheless, it should be noted that the above-quoted portion of the *Aluevich* opinion acknowledges that traditionally the employer holds vastly superior bargaining power when negotiating an "at-will" employment contract. The implied covenant has been applied elsewhere in employment contexts. *See Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367, 1374 (9th Cir.1984); *Cancellier v. Federated Department Stores*, 672 F.2d 1312, 1318 (9th Cir.1982). At the present stage of the

instant action it cannot be said that it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.

The fifth claim for relief herein sounds in the tort of intentional infliction of emotional distress. The plaintiff alleges he has suffered mental anguish and has become sick and ill. The defendants argue that the Nevada Industrial Insurance Act is the exclusive remedy available to an employee against his employer in connection with "any accident sustained arising out of and in the course of the employment" (NRS 616.370). They contend that distress due to discharge from employment is covered by the Act, thereby precluding a claim based on tort.

██ " 'Accident' means an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." NRS 616.020. In order for an incident to qualify as an "accident," the following elements must be present: (1) an unexpected or unforeseen event; (2) happening suddenly and violently; and (3) producing at the time objective symptoms of injury. *State Indus. Ins. System v. Buckley*, 100 Nev.Adv.Op. 81, 682 P.2d 1387, 1389 (1984); *American Intern. Vacations v. MacBride*, 99 Nev. 324, 661 P.2d 1301, 1303 (1983). The *MacBride* opinion gives broad interpretations of elements (1) and (2) that could encompass the situation of the plaintiff herein. However, "injury" is defined by statute as meaning "a sudden and tangible happening of a traumatic nature...." NRS 616.110(1). What happened to the plaintiff does not pertain to a wound or physical injury as seems to be required for the happening to be deemed "traumatic." *See Periss v. Nevada Industrial Commission*, 55 Nev. 40, 24 P.2d 318, 319 (1933); *American Intern. Vacations, v. MacBride, supra* at 661 P.2d 1304. Workmen's compensation laws aren't designed to relieve the consequences of losing one's job; other social legislation and recognized torts provide remedy. *Kern v. Ideal Basic Industries*, 101 N.M. 801, 689 P.2d 1272, 1273 (N.M.1984). In any event, the plaintiff's allegations that

his sickness and illness lie outside the purview of the Nevada Industrial Insurance Act is sufficient to avoid dismissal for failure to state a claim for relief. *McGinnis v. Consol. Casinos Corp.*, 94 Nev. 640, 584 P.2d 702, 703 (1978). A claim will not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981).

IT IS, THEREFORE, HEREBY ORDERED that the defendants' motion to dismiss is DENIED.